**JUSTICE CONSUMER LAW, LLC**
Marwan R. Daher, Esq.
15255 S. 94th Ave.
Orland Park, Illinois 60462
Telephone: (708) 304-3003
mdaher@justconsumerlaw.com
Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Eric T. Benson,<br><br>                  Plaintiff,<br><br>     v.<br><br>Morning Law Group, PC,<br><br>                  Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.  **VIOLATION OF THE ARIZONA CREDIT REPAIR ORGANIZATION ACT, A.R.S. 44-1701 *ET SEQ.***<br>2.  **VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT, A.R.S. § 44-1522 *ET SEQ.***<br>3.  **VIOLATION OF THE CREDIT REPAIR ORGANIZATION ACT, 15 U.S.C. § 1679 *ET SEQ.***<br><br>**JURY TRIAL DEMANDED** |

**NOW COMES** ERIC T. BENSON ("Plaintiff"), by and through the undersigned counsel, complaining as to the conduct of MORNING LAW GROUP, PC ("Defendant") as follows:

**NATURE OF THE ACTION**

1.      Plaintiff brings this action seeking redress for claims of Fraudulent Misrepresentation, Breach of Contract, Unjust Enrichment, Breach of Fiduciary Duty, as well as violations of the Arizona Credit Repair Organization Act ("ACROA") pursuant to A.R.S. 44-1701 et seq., the Arizona Consumer Fraud Act ("ACFA") pursuant to § 44-1522

1

et seq., and the Credit Repair Organizations Act ("CROA"), pursuant to 15 U.S.C. § 1679 et seq., stemming from Defendant's unlawful conduct.

## PARTIES

2.      Plaintiff is a consumer over 18 years-of-age who resides in Goodyear, Arizona.

3.      Defendant is a debt-relief law firm that markets itself as providing "cost-effective legal representation"[1] and assisting consumers with debt disputes. Defendant holds itself out as a provider of services involving creditor communications, debt-related legal representation, and credit-related disputes. Defendant is a professional corporation organized under the laws of the State of California with its principal place of business located at 175 Technology Drive, 200, Irvine, CA 92618.

4.      Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

5.      In or around late 2024, Plaintiff was financially stable, consistently making timely payments on his credit accounts, and maintained a strong credit score of approximately a 650 FICO[2], which enabled him to qualify for financing options such as solar installation.

---

[1] https://www,morninglawgroup.com/about/
[2] FICO is an acronym for Fair Isaac Corporation, the company that developed the FICO credit scoring models that many lenders use to help accurately predict a consumer's ability to repay a debt on time.

6.      Plaintiff was not actively seeking debt relief assistance, but began receiving unsolicited contact from Defendant in or around late 2023.

7.      Specifically, Defendant contacted Plaintiff and represented that it could assist him in eliminating his debts within two years, removing negative items from his credit report, and substantially improving his financial profile. Defendant further represented that it had specialized expertise that allowed it to settle debts significantly better than consumers could on their own.

8.      Defendant assured Plaintiff that its program had a successful track record of settling consumer debts, resolving outstanding balances, and handling creditor communications behind the scenes. Defendant further stated that Plaintiff's debts would be resolved through its efforts, that he would not have to worry about creditor contact, and that his credit would improve as a result of the program.

9.      Defendant repeatedly represented, both explicitly and implicitly, that a primary purpose of its services was to improve Plaintiff's financial situation, resolve his enrolled debts, and ultimately enhance his creditworthiness.

10.     Plaintiff reasonably relied on Defendant's representations and believed that Defendant would work directly with his creditors to resolve his debts, restore his credit profile, and provide meaningful legal protection.

11.     During the initial calls, Defendant told Plaintiff that all he needed to do was make monthly payments of $210, and that Defendant would handle everything related to creditor negotiations and credit improvement. Plaintiff was assured that Defendant was

3

working on his debts and that he could expect a full resolution within two years, along with substantial credit score improvement.

12.    Based on these assurances, Plaintiff entered into a contract with Defendant in or around November 2024 for Defendant's purported debt-relief, credit-improvement, and legal-representation services.

13.    Pursuant to the agreement, Plaintiff enrolled six (6) accounts totaling $11,727, and was required to make monthly payments of $210, consisting of a $160 "Admin Services" fee and a $50 "Legal Fee." Plaintiff relied on Defendant's representations that these payments would result in settlement efforts and resolution of his debts.

14.    Plaintiff was told that Defendant would begin working immediately to dispute, negotiate, and resolve his debts, and that staying in the program would lead to improved credit, reduced balances, and protection from lawsuits. Defendant made these statements despite expressly disclaiming such services in its written contract, which Plaintiff did not understand contradicted the verbal promises made to him.

15.    Plaintiff continued making timely payments to Defendant for approximately one (1) year. However, during that time, Defendant failed to secure any settlements, communicate any progress, or engage in good-faith negotiations with Plaintiff's creditors.

16.    As months passed with no results, Plaintiff repeatedly contacted Defendant for updates, but was met with scripted reassurances, vague statements, and no actual discussions with an attorney. Plaintiff was only permitted to speak with clerical staff, despite being charged legal fees each month.

4

17.    Despite Defendant's representations that Plaintiff would be protected from legal action, Plaintiff was sued by two separate creditors while enrolled in Defendant's program, Capital One, represented by Gurstel Law Firm, and Synchrony Bank, represented by Patenaude & Felix.

18.    Plaintiff immediately notified Defendant of both lawsuits, uploaded each summons, and requested assistance. Defendant assured him that it would take care of it, yet did nothing substantive. Instead, Defendant merely filed continuances and provided no actual representation, legal advice, or settlement efforts.

19.    As a result of Defendant's actions and inactions, Plaintiff's accounts continued to accrue interest, fees, and litigation exposure. His Discover balance increased from $5,682 to over $7,000, and his credit score further declined, rendering him ineligible for a solar loan he previously qualified for.

20.    Plaintiff became increasingly concerned, as Defendant repeatedly refused to let him speak with an attorney and instead routed him to administrative staff who read from scripts and offered no meaningful guidance regarding the lawsuits.

21.    After around a year of enrollment, with no settlements, worsening credit, and active lawsuits, Plaintiff attempted to cancel his participation from the program. Defendant made cancellation difficult, required multiple calls, and continued charging fees during the attempted termination period.

22.    Plaintiff's financial condition deteriorated significantly as a direct result of Defendant's conduct. His credit score dropped below 600, he was denied a solar loan, he incurred litigation exposure, and his debt balances increased rather than decreased.

5

23.   Defendant's misrepresentations, omissions, and failure to provide the services it promised caused Plaintiff substantial financial and emotional harm. Plaintiff's reliance on Defendant's assurances resulted in wasted payments, increased debt, worsened credit, and a loss of opportunities.

24.   Plaintiff sought the assistance of the undersigned regarding his rights and the damages caused by Defendant's deceptive, misleading, and unlawful practices.

25.   Plaintiff has suffered concrete injuries, including but not limited to: out-of-pocket losses, increased debt, late fees, accrued interest, damaged credit scores, loss of financing opportunities, exposure to lawsuits, emotional distress, anxiety, mental anguish, and pecuniary loss stemming from payments made to Defendant for services that were never provided, as well as violations of Plaintiff's state and federal rights to be free from deceptive practices by purported debt-relief providers.

## COUNT I – FRAUDULENT MISREPRESENTATIONS

26.   Plaintiff restates and realleges paragraphs 1 through 25 as though fully set forth herein.

27.   In Arizona, the elements for a fraudulent misrepresentation claim include: (1) a material misrepresentation; (2) made with knowledge of its falsity or asserted without knowledge of its truth; (3) made with the intention that it should be acted on by the other party; (4) which the other party relied on; and (5) which caused injury. *See McAlister v. Citibank (Arizona)*, 171 Ariz. 207, 829 P.2d 1253 (App. 1992).

28.   Defendant engaged in fraudulent misrepresentation through numerous false statements made to Plaintiff regarding the nature, quality, and efficacy of its services.

6

Defendant represented that it would work behind the scenes to negotiate with Plaintiff's creditors, eliminate or significantly reduce his debts within two years, protect him from creditor actions, and improve his credit profile. Defendant made these representations despite knowing they were false, and despite the written agreement expressly disclaiming such services. Defendant intended Plaintiff to rely upon these promises in order to induce him to enroll and continue making monthly payments. Plaintiff reasonably relied on these representations when he signed the agreement and made consistent payments to Defendant.

29.    Contrary to Defendant's assurances, Plaintiff's credit score declined sharply during his participation in the program. Plaintiff entered the program with a credit score of approximately 650 FICO, and his score dropped below 600 FICO, causing him to lose financing opportunities on solar panels that he was previously approved for. These outcomes are directly inconsistent with Defendant's representations that Plaintiff's credit would improve.

30.    Defendant further misrepresented that it would promptly address and resolve Plaintiff's debts, protect him from adverse actions, and actively negotiate with creditors. In reality, Defendant did none of these things. Plaintiff remained in the program for approximately a year with no settlements whatsoever. Instead of resolving debts, Plaintiff's balances increased and Defendant failed to engage in any legitimate negotiation efforts.

31.    Plaintiff was also sued by two of his enrolled creditors, despite following Defendant's instructions and despite being assured that Defendant would handle any legal issues that arose. Defendant provided no meaningful legal representation in either case, allowed deadlines to pass, and merely filed continuances while refusing to allow Plaintiff

7

to speak with an attorney. Plaintiff was left to face the lawsuits and their consequences on his own.

32.    Defendant's conduct was deceptive, misleading, and intentionally structured to induce Plaintiff to enroll and continue paying monthly fees, rather than to actually deliver the debt-relief services it advertised. Defendant misrepresented the services it would provide, concealed the true nature of the program, and continued to charge Plaintiff suffered increased debt, credit score damage, litigation exposure, loss of financing opportunities, and wasted payments, all of which were the direct result of Defendant's fraudulent scheme.

33.    As outlined above, Plaintiff suffered substantial harm as a result of Defendant's fraudulent misrepresentations.

**WHEREFORE**, Plaintiff, Eric T. Benson, respectfully requests that This Honorable Court enter judgment in his favor as follows:

a.    Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.    Awarding Plaintiff actual and punitive damages, in an amount to be determined at trial, for the underlying violations;

c.    Awarding Plaintiff costs and reasonable attorney fees; and

d.    Awarding any other relief as this Court deems just and appropriate.

## COUNT II – NEGLIGENT MISREPRESENTATION

34.    Plaintiff restates and realleges paragraphs 1 through 39 as though fully set forth herein.

8

35.    Under Arizona law, a claim for negligent misrepresentation requires the following elements: (1) The defendant provided false information in a business transaction; (2) Without exercising reasonable care or competence in obtaining or communicating the information; (3) The defendant intended that the plaintiff rely on the information and guide their conduct based on it; (4) The plaintiff justifiably relied on the false information; and (5) Pecuniary loss resulted. *See McAlister v. Citibank (Arizona),* 171 Ariz. 207, 213, 829 P.2d 1253, 1259 (App. 1992).

36.    Defendant made negligent misrepresentations to Plaintiff by representing that: (1) it would promptly and effectively engage with Plaintiff's creditors; (2) it would negotiate and resolve his debts within approximately two years; (3) it would protect him from creditor actions and lawsuits; and (4) participation in the program would lead to an improvement in Plaintiff's credit profile.

37.    These representations were made without reasonable care as to their truth or falsity. Defendant failed to exercise reasonable diligence in assessing whether it could actually settle Plaintiff's debts, protect him from litigation, or improve his credit. Defendant also failed to disclose that its own fees would be prioritized over settlements, that no negotiations were being conducted, and that Plaintiff's debts and credit standing would worsen during the program.

38.    Defendant further led Plaintiff to believe, both explicitly and implicitly, that it was actively working to resolve his accounts and that he did not have to worry about creditor contact or legal action. These representations were made despite Defendant's

9

knowledge that no settlements were underway and that Plaintiff's accounts were being neglected.

39.     Defendant also represented that Plaintiff's credit score would improve as a result of his participation in the program and that the program was designed to restore his financial health. In reality, Plaintiff's credit score fell from approximately 650 at enrollment to below 600, resulting in loss of financing opportunities, including the denial of a solar loan.

40.     Plaintiff justifiably relied on Defendant's statements when he chose to enroll, remained in the program for approximately one year, and continued making monthly payments. Plaintiff was never informed of Defendant's failure to take action on his accounts, the deterioration of his credit, or the litigation risks he faced.

41.     As a result of Defendant's negligent misrepresentations, Plaintiff suffered pecuniary loss, including wasted payments, increased debt balances, damaged creditworthiness, litigation exposure, loss of financing opportunities, and emotional distress stemming from the financial instability caused by Defendant's conduct.

**WHEREFORE**, Plaintiff, Eric T. Benson, respectfully requests that This Honorable Court enter judgment in his favor as follows:

a.     Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.     Awarding Plaintiff actual and punitive damages, in an amount to be determined at trial, for the underlying violations;

c.     Awarding Plaintiff's costs and reasonable attorney fees; and

d.      Awarding any other relief as this Court deems just and appropriate.

## COUNT III – BREACH OF CONTRACT

42.     Plaintiff restates and realleges paragraphs 1 through 41 as though fully set forth herein.

43.     Despite Plaintiff's performance of his duties under the contract between the parties, Defendant breached the underlying agreement between the parties in several material respects.

44.     Defendant breached the contract by failing to provide the debt-relief and legal-representation services it promised. Plaintiff paid Defendant for a full year with the expectation that Defendant would dispute, negotiate, and resolve his enrolled debts. Instead, Defendant performed no meaningful work on Plaintiff's accounts and failed to secure a single settlement.

45.     Defendant further breached the agreement by failing to protect Plaintiff from creditor action, despite expressly representing that it would handle any lawsuits arising from enrolled debts. Plaintiff was sued by Capital One and Synchrony Bank while enrolled in Defendant's program, yet Defendant took no substantive action in either case, refusing to allow Plaintiff to speak with an attorney, failing to provide guidance, and merely filing continuances with no defense strategy.

46.     Defendant also breached the agreement by failing to provide any refunds or adjustments for services it did not perform. Although Defendant charged ongoing legal fees, it did not provide legal representation, did not negotiate with creditors, and did not take steps to resolve Plaintiff's accounts, thereby retaining fees it did not earn.

47.    Defendant breached the agreement by failing to perform the legal services it expressly agreed to provide, including but not limited to communicating with creditors, challenging debts, negotiating resolutions, and defending Plaintiff in litigation related to the enrolled accounts. Defendant's failure to perform these duties left Plaintiff unprotected, exposed to lawsuits, and facing increased debt balances and credit score deterioration.

**WHEREFORE**, Plaintiff, Eric T. Benson, respectfully requests that This Honorable Court enter judgment in his favor as follows:

a.    Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.    Awarding Plaintiff actual and punitive damages, in an amount to be determined at trial, for the underlying violations;

c.    Awarding Plaintiff costs and reasonable attorney fees; and

d.    Awarding any other relief as this Court deems just and appropriate.

### COUNT IV – UNJUST ENRICHMENT

48.    Plaintiff restates and realleges paragraphs 1 through 47 as though fully set forth herein.

49.    Under Arizona law, a claim for unjust enrichment requires the following elements: (1) an enrichment of the defendant; (2) an impoverishment of the plaintiff; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and impoverishment; and (5) the lack of a legal remedy or inadequate

legal remedy. *See Trustmark Ins. Co. v. Bank One, Arizona, N.A.*, 202 Ariz. 535, 541 ¶ 31, 48 P.3d 485, 491 (App. 2002).

50.    Defendant was unjustly enriched by retaining substantial monthly fees paid by Plaintiff for debt-relief and legal-representation services that Defendant never provided.

51.    Plaintiff paid monthly program fees with the understanding that Defendant would dispute his debts, communicate with creditors, negotiate settlements, and provide legal representation if lawsuits arose. These services were supposed to help resolve Plaintiff's debts and improve his financial condition.

52.    Defendant accepted and retained Plaintiff's payments despite failing to secure a single settlement, failing to communicate with creditors, failing to negotiate Plaintiff's debts, and failing to provide meaningful legal representation when Plaintiff was sued by Capital One and Synchrony Bank. Instead, Defendant merely filed continuances and refused to allow Plaintiff to speak to an attorney.

53.    Defendant further retained fees in months when no services were performed at all. Defendant mismanaged Plaintiff's accounts, failed to engage in any debt-resolution efforts, and allowed Plaintiff's balances and credit damage to worsen while continuing to collect monthly payments. Plaintiff's payment of fees resulted in no benefit and left him financially worse off than before enrollment.

54.    Under these circumstances, it would be inequitable and unjust for Defendant to retain the funds paid by Plaintiff, as Defendant provided no commensurate value in return and failed to perform the very services for which Plaintiff was charged.

13

55.    Defendant's retention of these funds without providing any meaningful services is inequitable and contrary to principles of justice, equity, and good conscience. To the extent the Court finds that no enforceable contractual remedy fully addresses the misconduct alleged herein, Plaintiff pleads this unjust enrichment claim in the alternative.

**WHEREFORE**, Plaintiff, Eric T. Benson, respectfully requests that This Honorable Court enter judgment in his favor as follows:

a.    Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.    Awarding Plaintiff actual and punitive damages, in an amount to be determined at trial, for the underlying violations;

c.    Awarding Plaintiff's costs and reasonable attorney fees; and

d.    Awarding any other relief as this Court deems just and appropriate.

## COUNT V – BREACH OF FIDUCIARY DUTY

56.    Plaintiff restates and realleges paragraphs 1 through 55 as though fully set forth herein.

57.    Defendant owed Plaintiff a fiduciary duty arising out of the nature of their relationship. Defendant was purporting to provide debt settlement and negotiating services, including power of attorney and legal counsel to Plaintiff, inherently rendering Defendant as Plaintiff's fiduciary as their presumptive legal counsel. *See Rhoads v. Harvey Publications, Inc.*, 145 Ariz. 142, 144 (App. 1985).

58.    Defendant breached its fiduciary duty owed to Plaintiff given the nature of the "services" it provided Plaintiff. Despite purporting to have Plaintiff's best interest in

14

mind, Defendant caused Plaintiff significant hardship through its provision of objectively and unreasonably misguided advice. Defendant further breached its fiduciary duty by failing to act as Plaintiff's "power of attorney" as to all client's debts underpinning the reason Plaintiff decided to utilize Defendant's services. Defendant completely disregarded the fiduciary duties it owed to Plaintiff, and Defendant's breach of such duty caused Plaintiff significant financial harm as well as emotional distress.

59.    Specifically, Plaintiff was sued by two enrolled creditors despite Defendant's assurances that it would handle creditor matters and defend Plaintiff in such lawsuits. Defendant failed to provide meaningful legal representation in either case, refused to allow Plaintiff to speak with an attorney, and merely filed continuances without any substantive defense, negotiation, or legal strategy.

60.    As alleged above, Defendant breached its fiduciary duty of care, loyalty, and good faith to Plaintiff by failing in its duties as Plaintiff's power of attorney and failing to work in the best interest of Plaintiff. Instead, Defendant conducted its business for the sole purpose of increasing its profits at the expense of Plaintiff.

61.    Defendant intentionally breached its fiduciary duty to Plaintiff on more than one occasion and such breaches were the actual and proximate cause of harm to Plaintiff.

62.    As outlined above, Plaintiff was harmed by Defendant's breach of its fiduciary duty.

**WHEREFORE**, Plaintiff, ERIC T. BENSON, respectfully requests that this Court enter judgment in his favor as follows:

15

a.    Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.    Awarding Plaintiff actual and punitive damages, in an amount to be determined at trial, for the underlying violations;

c.    Awarding Plaintiff costs and reasonable attorney fees; and

d.    Awarding any other relief as this Court deems just and appropriate.

**COUNT VI - VIOLATIONS OF THE ARIZONA CREDIT REPAIR ORGANIZATION ACT**

63.    Plaintiff restates and realleges paragraphs 1 through 62 as though fully set forth herein.

64.    Plaintiff is a "Buyer" as defined by A.R.S. 44-1701-1.

65.    Defendant is a "Credit Services Organization" as defined by A.R.S. 44-1701-2.

**a.    Violation of ACROA – A.R.S. 44-1703-4**

66.    The ACROA, pursuant to A.R.S. 44-1703-4, prohibits a credit services organization from "[m]ak[ing[ or us[ing] any untrue or misleading representations in the offer or sale of the services of a credit services organization or engage, directly or indirectly, in an act, practice or course of business which operates or would operate as a fraud or deception on a person in connection with the offer or sale of the services of a credit services organization."

67.    Defendant violated A.R.S. 44-1703-4 through the same conduct that violates 15 U.S.C. § 1679b(a)(3)-(4) outlined above.

68.    As alleged above, Plaintiff was severely harmed by Defendant's actions and inactions.

**WHEREFORE**, Plaintiff, Eric T. Benson, respectfully requests that this Court enter judgment in his favor as follows:

a.    Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.    Awarding Plaintiff actual damages pursuant to A.R.S. 44-1711;

c.    Awarding Plaintiff punitive damages pursuant to A.R.S. 44-1711;

d.    Awarding Plaintiff's costs and reasonable attorney fees, pursuant to A.R.S. 44-1711; and,

e.    Awarding any other relief this Court deems just and appropriate.

### COUNT VII - VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT

69.    Plaintiff restates and realleges paragraphs 1 through 70 as though fully set forth herein.

70.    Defendant's conduct constitutes "unlawful practice" as defined by ARS §44-1522 of the ACFA.

71.    The ACFA states:

The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice. Ariz. Rev. Stat. Ann. § 44-1522.

72.    Defendant violated ARS §44-1522 by engaging in an unfair and deceptive act or practice in misrepresenting the nature of its services to Plaintiff. It was inherently

17

deceptive and unfair for Defendant to continue to represent that it would be able to resolve all of his subject accounts over the course of its program so long as he had sufficient funds. Plaintiff had such sufficient funds, yet Defendant failed to negotiate the his subject accounts after about one year of retaining Plaintiff's payments.

73.    Defendant further violated ARS §44-1522 through its representation that it would defend Plaintiff in any lawsuits filed against them, but that representation was proven false through Defendant's subsequent conduct.

74.    As alleged above, Plaintiff was severely harmed by Defendant's actions and inaction.

**WHEREFORE**, Plaintiff, Eric T. Benson, respectfully requests that this Court enter judgment in his favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.  Awarding Plaintiff actual and punitive damages, in an amount to be determined at trial, for the underlying violations;

c.  Awarding Plaintiff costs and reasonable attorney fees; and

d.  Awarding any other relief as this Court deems just and appropriate.

**COUNT VIII – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT**

75.    Plaintiff repeats and realleges paragraphs 1 through 74 as though fully set forth herein.

76.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

18

77.    Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

### a.  Violations of CROA § 1679b(a)

78.    The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

79.    Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. Defendant affirmatively represented to Plaintiff that it would be able to resolve his obligations if he maintained monthly payments per the parties' agreed schedule. Plaintiff made his payments faithfully; however, Defendant failed to deliver the promised credit repair services. As such, Defendant's affirmative representations were false and misleading. Upon information and belief, Defendant's pattern and practice is to

overpromise consumers the result they want in order to induce such consumer to sign up, despite knowing their inability to follow through on their representations.

**b. Violations of CROA § 1679b(b)**

80. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

81. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendant's practice of charging a retainer for services upfront, before such services are performed, is inherently in violation of the CROA. Further, although Defendant was charging Plaintiff for purported "services", it never actually provided such services, and certainly did not perform them prior to charging Plaintiff. Plaintiff paid Defendant substantially more than the amount of debt it attempted settling for Plaintiff, further illustrating the extent to which Defendant has improperly maintained fees for services it never actually performed.

**c. Violation of CROA § 1679c**

82. The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumer. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

83.     Defendant violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

**d.  Violation of CROA §§ 1679d(4) & 1679e**

84.     The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" Under § 1679e, a CRO must provide a consumer a separate notice of a consumer's cancellation right.

85.     Defendant violated 15 U.S.C. §§ 1679d(4) & 1679e through its failure to provide the disclosure required by the CROA both in the contract between the parties, as well as in any other separate form.

**e.  Violation of CROA § 1679f(b)**

86.     The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

87.     Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded him under the CROA. Defendant's contract

21

attempts to justify its retention of payments prior to performing services, which is tantamount to Plaintiff waiving the protection afforded by § 1679b(b).

88.    The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

89.    As alleged above, Plaintiff was harmed by Defendant's misconduct.

**WHEREFORE**, Plaintiff, Eric T. Benson, respectfully requests that this Court enter judgment in his favor as follows:

a.    Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b.    Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c.    Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d.    Awarding Plaintiff's costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e.    Awarding any other relief as this Court deems just and appropriate.

**Plaintiff demands a jury trial.**

Dated: December 4, 2025                    Respectfully Submitted,

                                           /s/ Marwan R. Daher
                                           Marwan R. Daher, Esq.
                                           Justice Consumer Law, LLC
                                           15255 S. 94th Ave.
                                           Telephone: (708) 304-3003
                                           mdaher@justconsumerlaw.com
                                           *Counsel for Plaintiff*